815 F.2d 704
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Chester A. McCONNELL, Mrs. Dalton Priestley, James W.
Priestley, R.B. Priestley, and Lodasca Priestley,
Plaintiff-Appellants,
v.
Dale F. MEANS, District Engineer, Memphis District, United
States Army Corps of Engineers, Defendant-Appellee.
 No. 86-5021.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1987.
 
 Before ENGEL and JONES, Circuit Judges, and ALLEN, District Judge*
 PER CURIAM.
 
 
 1
 Plaintiffs appeal the district court's dismissal of their suit. For the reasons discussed below, we affirm.
 
 
 2
 This suit arises from the events surrounding the West Tennessee Tributaries Project, an improvement plan consisting of channel enlargements on the Obion and Forked Deer rivers in western Tennessee. In 1970, a lawsuit was commenced challenging the sufficiency of the Army Corps of Engineers' ("Corps") attempt to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. Sec. 4321 et seq. (1982), and the Fish and Wildlife Coordination Act, 16 U.S.C. Sec. 661 et seq. (1982), with regard to the project. See Akers v. Resor, Civ. No. 70-349 (W.D.Tenn.). In 1972, the district court in Akers concluded that the Corps had not complied with the procedural requirements of NEPA. Consequently, the court enjoined the Corps from proceeding with the project until a satisfactory environmental impact study ("EIS") was prepared. The Corps completed its revised EIS in 1975. However, following a lengthy trial, the district court concluded in 1977 that the EIS was still inadequate, and continued the earlier injunction until the Corps complied with the NEPA requirements. The court further stated that it would review any revised EIS for the project if the plaintiffs in the lawsuit so requested. In 1983, a supplement to the 1975 EIS was issued by the Corps. The plaintiffs did not seek judicial review of the supplement. Instead, the plaintiffs and defendants entered into lengthy settlement negotiations, which also included the State of Tennessee, and entered into a consent agreement settling the case and allowing the Corps to proceed with the project under specified conditions. The consent agreement was approved by the district court on May 9, 1985.
 
 
 3
 On the same day, the district court denied Chester McConnell's motion to intervene in the Akers case. McConnell had filed the intervention motion in April 1984, claiming that the 1983 supplement to the 1975 EIS was deficient. In his affidavit accompanying the motion, McConnell stated that because of the decision of the Akers plaintiffs to settle, "major impacts of the proposed West Tennessee Tributaries channelization project will not be disclosed unless [I am] allowed to intervene." The parties to the Akers litigation opposed the intervention motion.
 
 
 4
 The district court denied the motion primarily because it was untimely. The court also found that the Akers plaintiffs had adequately represented the interests of persons opposed to the Corps' implementation of the project. Finally, the court noted that "broad public prejudice" would result from further delay of the flood control project. McConnell did not elect to appeal the denial of the motion. In 1977, the other plaintiffs in the instant suit had also attempted to intervene in Akers. Their request to intervene was denied, and they too did not appeal the denial.
 
 
 5
 Following the denial of McConnell's motion to intervene in Akers, and the entry of the consent order on May 9, 1985, the Corps issued public notices pursuant to Sec. 404 of the Clean Water Act, 33 U.S.C. Sec. 1344 (1982), which announced plans to initiate work on the south fork of Forked Deer River. The Corps also requested water quality certification permits pursuant to Sec. 401 of the Clean Water Act, id. Sec. 1341, from the Tennessee Department of Public Health and Environment. A contract for the first item of work was awarded on August 22, 1985.
 
 
 6
 On August 23, 1985, plaintiffs filed the present action. The complaint alleged that the 1983 supplement to the EIS did not satisfy NEPA requirements and that the Corps ignored the views of the Department of the Interior's Fish and Wildlife Service in violation of the Fish and Wildlife Coordination Act, 16 U.S.C. Sec. 661 et seq. The complaint also alleged that the Corps' applications for water quality certification permits from the state constituted "piecemealing" in violation of Secs. 401 and 404 of the Clean Water Act, 33 U.S.C. Secs. 1341 and 1344. The plaintiffs sought both a temporary restraining order and a preliminary injunction to stop channel construction work, an order directing the Corps to apply for a single water quality certification permit for the entire project, and an order that all project work be stopped pending the preparation of an adequate supplement to the 1975 EIS. The district court refused to grant a temporary restraining order or a preliminary injunction. Thereafter, work on the project resumed. On October 2, 1985, the Corps filed a motion to dismiss. The Corps raised two main points in support of the motion. First, that the instant suit sought relief that would nullify the final judgment in Akers; and therefore constituted an impermissible collateral attack upon the Akers final order. Second, the plaintiffs should be barred from pursuing their suit by the doctrine of laches. The Corps also asserted that it had fully complied with the NEPA.
 
 
 7
 The district court did not address the merits of the plaintiffs' claims or the merits of the Corps' NEPA contentions. Instead, it dismissed the complaint on the ground that the action was an impermissable collateral attack on the Akers judgment. The district court held, alternatively, that the doctrine of laches barred the action. This appeal followed.
 
 
 8
 The plaintiffs argue that the instant case is not an impermissible collateral attack on Akers because the suit challenges the Corps' 1983 supplement to the 1975 EIS rather than the Akers consent order itself, and the consent order in Akers did not reach the merits of the adequacy of the 1983 supplement under NEPA. The plaintiffs had the opportunity to intervene in Akers and failed to appeal the denial of their motions to intervene. The proper course of action would have been for them to appeal the denial of their motions. See Burns v. Board of School Commissioners, 437 F.2d 1143, 1144 (7th Cir.1971). Therefore, their attempt to collaterally attack the decree must fail.
 
 
 9
 The plaintiffs also allege that the decision of the Corps to apply for water quality certification from the State of Tennessee on only nine miles of river at a time constitutes unlawful piecemealing of environmental considerations in violation of Secs. 401 and 404 of the Clean Water Act, 33 U.S.C. Sec. 1341 and 1344. The district court never reached the merits of this claim. Because plaintiffs are challenging the issuance of a water quality certification permit to the Corps by the State of Tennessee, the proper initial forum for judicial review of this is in state court. See Mobil Oil Corp. v. Kelley, 426 F.Supp. 230, 235 (S.D.Ala.1976).
 
 
 10
 Therefore, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Charles M. Allen, Senior Judge, United States District Court for the Western District of Kentucky, sitting by designation